IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00898-DME-CBS

DAVID KEVIN WILL,

    Plaintiff,

v.

PARSONS EVERGREENE, LLC,

    Defendant.

**ORDER**

This matter comes before the Court on Defendant Parsons Evergreene, LLC's ("Parsons") Motion to Dismiss or in the Alternative Stay Proceedings Pending Arbitration. (Doc. 12.) Plaintiff David Kevin Will ("Will") filed a response, and Parsons filed a reply in support of its motion.

**I. Background**

This complaint was brought by Will against his employer, Parsons, seeking relief pursuant to the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301, *et seq.* ("USERRA"), as well civil fines under Colorado law. USERRA was enacted to protect the rights of veterans and members of the uniformed services, and much of USERRA is devoted to establishing "reemployment" rights for persons who are absent from their jobs due to service in the uniformed services. See Quick v. Frontier

Airlines, Inc., 544 F.Supp.2d 1197, 1206-07 (D. Colo. 2008). Will asserts that Parsons, in violation of USERRA, failed to reinstate him to a position of similar status, seniority and pay following his return from active military service in Afghanistan. In response, Parsons filed the motion at issue on the basis that the parties agreed to arbitrate this dispute under Will's employment agreement with Parsons, executed on May 16, 2005.

The employment agreement provides that Will agrees to be bound by the terms of the Parsons Employee Dispute Resolution Program ("EDR Program") "during and after [his] employment with Parsons, for all claims arising out of [his] employment relationship with Parsons except those disputes . . . generally relating to confidentiality and intellectual property." (Def. Ex. B-1.) The EDR Program requires all disputes covered by the agreement to be submitted to mediation, and if mediation fails to resolve the dispute to the parties' mutual satisfaction, then for binding arbitration at the request of one party. Alternatively, the parties may mutually agree to forego mediation and proceed directly to binding arbitration. Claims covered by the EDR Program include "Legally Protected Rights or Legally Protected Claims," a defined term encompassing all "claims for violation of any federal or state law, statue, regulation or ordinance, or those of any other governmental body having jurisdiction." (Def. Ex. B-2, § I.C.7.) The EDR Program does provide some exceptions, including for claims pertaining to unemployment benefits and workers' compensation claims.

Will opposes Parsons's motion and argues that his USERRA claims are

not subject to mandatory arbitration.

## II. Arbitrability of USERRA Claims

Parsons requests dismissal of the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. See Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). USERRA not only creates substantive rights, but also explicitly provides that an action brought under it can be heard in federal court. See 38 U.S.C. § 4323(b)(3) ("In the case of an action against a private employer by a person, the district courts of the United States shall have jurisdiction of the action.") Nonetheless, Parsons asserts that the complaint should be dismissed because the parties have a valid and enforceable arbitration clause covering the dispute. The mere existence of an arbitration agreement, however, does not divest a federal court of subject matter jurisdiction. See Briarpatch Ltd., L.P. v. Pate, 81 F.Supp.2d 509, 517 (S.D.N.Y. 2000).[1]

---

[1] Hagerman v. United Trans. Union, 281 F.3d 1189, 1195 (10th Cir. 2002), which Parsons relies upon, is inapposite. Hagerman related to claims governed by the New York Dock Conditions (NYDC), which required mandatory arbitration of disputes covered by the NYDC. The NYDC were imposed by the Surface Transportation Board (the successor to the Interstate Commerce Commission) to govern the resolution of labor disputes arising over the implementation of a merger between two railroads. Because the NYDC remedies effectively preempted other legal remedies, the Tenth Circuit held that "[w]here the mandatory arbitration provisions of the NYDC apply, the district court lacks subject matter jurisdiction over the same dispute." Id. at 1195. Hagerman did not involve an arbitration agreement between an employer and an employee.

(continued...)

Alternatively, Parsons seeks a stay of these proceedings, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, so that the parties may proceed with mediation and, if necessary, binding arbitration. Section 3 provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The FAA was enacted "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Corp., 500 U.S. 20, 24 (1991). The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts have long recognized that the FAA "manifests a liberal federal policy favoring arbitration." Comanche

---

[1](...continued)
The other cases relied upon by Parsons either are incorrect or simply involve the sloppy use of language which is quoted out of context. See, e.g., Encore Productions, Inc. v. Promise Keepers, 53 F.Supp.2d 1101, 1111 (D. Colo. 1999) ("Under Colorado law, a valid and unwaived arbitration clause deprives the court of subject matter jurisdiction until the dispute has been submitted to arbitration.") (emphasis added) (quotation omitted). The court's decision in Encore, for instance, was clearly wrong, as subject matter jurisdiction is a matter of *federal* law, not Colorado law.

Indian Tribe v. 49, L.L.C., 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting Gilmer, 500 U.S. at 25). "In keeping with this liberal policy favoring arbitration, courts are instructed to resolve 'any doubts concerning the scope or arbitrable issues . . . in favor of arbitration.'" P&P Industries, Inc. v. Sutter Corp., 179 F.3d 861, 866 (10th Cir. 1999) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

In Gilmer, the Supreme Court held that agreements which require arbitration of statutory claims are enforceable under the FAA. 500 U.S. at 26 (holding that ADEA claims, as well as other statutory claims may be subjected to compulsory arbitration). "The Court reasoned that by submitting statutory claims to arbitration, an individual does not forgo substantive rights provided by the statute, but merely submits their resolution to an alternate forum." Shankle v. B-G Maint. Mgmt. of Colo., Inc., 163 F.3d 1230, 1234 (10th Cir. 1999) (citing Gilmer, 500 U.S. at 26). Moreover, the Court explained that "the arbitral forum, like the judicial forum, provides an adequate mechanism for furthering public policy goals advanced by the statute." Id. (citing Gilmer, 500 U.S. at 27-28; Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 635-37 (1985)).

"Although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Gilmer, 500 U.S. at 26 (internal quotation omitted). The burden is on the party opposing arbitration to show that

Indian Tribe v. 49, L.L.C., 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting Gilmer, 500 U.S. at 25). "In keeping with this liberal policy favoring arbitration, courts are instructed to resolve 'any doubts concerning the scope or arbitrable issues . . . in favor of arbitration.'" P&P Industries, Inc. v. Sutter Corp., 179 F.3d 861, 866 (10th Cir. 1999) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

In Gilmer, the Supreme Court held that agreements which require arbitration of statutory claims are enforceable under the FAA. 500 U.S. at 26 (holding that ADEA claims, as well as other statutory claims may be subjected to compulsory arbitration). "The Court reasoned that by submitting statutory claims to arbitration, an individual does not forgo substantive rights provided by the statute, but merely submits their resolution to an alternate forum." Shankle v. B-G Maint. Mgmt. of Colo., Inc., 163 F.3d 1230, 1234 (10th Cir. 1999) (citing Gilmer, 500 U.S. at 26). Moreover, the Court explained that "the arbitral forum, like the judicial forum, provides an adequate mechanism for furthering public policy goals advanced by the statute." Id. (citing Gilmer, 500 U.S. at 27-28; Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 635-37 (1985)).

"Although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Gilmer, 500 U.S. at 26 (internal quotation omitted). The burden is on the party opposing arbitration to show that

Congress intended to preclude a waiver of a judicial forum for the particular claim. Id. "If such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the [statute's] underlying purposes. Throughout such an inquiry, it should be kept in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Id. (internal quotations and citations omitted). Following Gilmer, courts have regularly held that federal statutory claims are subject to the FAA and mandatory arbitration. See, e.g., Metz v. Merrill Lynch, Pierce, Feener & Smith, 39 F.3d 1482, 1487 (10th Cir. 1994) (holding that Title VII claims are subject to mandatory arbitration).

In Garrett v. Circuit City Stores, Inc., 449 F.3d 672 (5th Cir. 2006), the Firth Circuit held that USERRA claims are subject to mandatory arbitration. First, the statutory language of USERRA did not demonstrate a Congressional intent to preclude arbitration. Id. at 677. The court considered and rejected the argument that 38 U.S.C. § 4302(b) precludes arbitration. Id. at 676. Section 4302(b) provides that:

> This chapter supersedes any State law . . . contract, agreement, policy, plan, practice or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such benefit.

This provision, however, only protected substantive rights under USERRA; it did not preclude arbitration. "[B]y agreeing to arbitration, a party does not forego the substantive rights afforded by the statute, it only submits its claims to an arbitral, rather than judicial forum." Garrett, 449 F.3d at 677. And,

notwithstanding the Gilmer decision issued three years before the enactment of § 4302(b), which Congress was presumptively aware of, nothing in the statute mentions mandatory arbitration or the FAA. Id.

The Garrett court considered the text of USERRA unambiguous, rendering resort to legislative history unnecessary. Id. at 680. Nonetheless, it continued, and concluded that the legislative history of USERRA did not indicate that Congress intended to prevent arbitration of USERRA claims. Id. at 680. Garrett argued that a portion of the 1994 legislative history of § 4302(b) from the House Committee Report confirmed Congressional intent to forbid binding arbitration. The relevant text of the Report states:

> Section 4302(b) would reaffirm a general preemption as to State and local laws and ordinances, as well as to employer practices and agreements, which provide fewer rights or otherwise limit rights provided under amended chapter 43 or put additional conditions on those rights. [Several federal court decisions] provide that no employer practice or agreement can reduce, limit or eliminate any right under chapter 43. Moreover, this section would reaffirm that additional resort to mechanisms such as grievance procedures or arbitration or similar administrative appeals is not required. See McKinney v. Missouri-Kansas-Texas R.Co., 357 U.S. 265, 270, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958); Beckley v. Lipe-Rollway Corp., 448 F.Supp. 563, 567 (N.D.N.Y.1978). It is the Committee's intent that, even if a person protected under the Act resorts to arbitration, any arbitration decision shall not be binding as a matter of law. See Kidder v. Eastern Air Lines, Inc., 469 F.Supp. 1060, 1064-65 (S.D.Fla.1978).

Id. at 679 (quoting H.R.Rep. No. 103-65, 1994, *as reprinted in* 1994 U.S.C.C.A.N. 2449, 2453). The court noted that there was no comparable report from the Senate, that the House Report did not mention Gilmer, and that the courts in the cases cited in the Report prevented intrusions into the rights of

veterans by the operation of laws, contracts, or plans to which the employee was not or could not be a party. Id. at 679; id. at 680 n.10 (noting that in Kidder, 469 F.Supp. 1060, cited in the House Report, the district court held that an employee was not required to exhaust the grievance process in a *union* contract before filing suit in federal court). Considering "the totality of the quoted language [of the Report], along with its imbedded citations, strongly suggests that Congress intended § 4302(b) only to prohibit the limiting of USERRA's substantive rights by union contracts and collective bargaining agreements, and that Congress did not refer to arbitration agreements between an employer and an individual employee." Id. at 680.

Finally, the court explained that there is no inherent conflict between arbitration and USERRA's underlying structure and purposes, because arbitration can provide a fair opportunity to present and prevail upon a claim of a violation of USERRA. Id. at 681

The Sixth Circuit recently agreed with Garrett and held USERRA claims arbitrable, Landis v. Pinnacle Eye Care, LLC, 537 F.3d 559 (6th Cir. 2008), and so have two recent decisions from this district, Ohlfs v. Charles Schwab & Co., Inc., No. 08-cv-00710, 2008 WL 4426012 (D. Colo. Sept. 25, 2008); Ernest v. Lockheed Martin Corp., No. 07-cv-02038, 2008 WL 2958964 (D. Colo. July 29, 2008), as well as several other district courts across the country, Kitts v. Menards, Inc., 519 F.Supp.2d 837 (N.D. Ind. 2007; Klein v. City of Lansing, 2007 WL 1521187 (W.D. Mich. May 21, 2007). Likewise, this Court finds Garrett persuasive.

Will argues, however, that this Court should follow the logic set forth in several district court cases pre-dating Garrett, which held that USERRA claims were not subject to an otherwise valid arbitration agreement. See Lopez v. Dillard's Inc., 382 F.Supp.2d 1245 (D. Kan. 2005); Breletic v. Caci, Inc.-Federal, 413 F.Supp.2d 1329, 1337-38 (N.D. Ga. 2006).[2] In Lopez, the district court held that the plain language of USERRA precluded enforcement of an arbitration agreement because § 4302(b) provides that USERRA supersedes any contract that establishes "additional prerequisites" to the exercise of any right under USERRA, and that an "arbitration agreement does just that." Lopez, 382 F.Supp.2d at 1248. However, the district court in Lopez erred because the enforcement of an arbitration agreement does not function as a "prerequisite" to the exercise of any right under USERRA – it serves as a *waiver* of a judicial forum for resolution of the rights under USERRA, which can then be fully vindicated in arbitration. As the Supreme Court has explained, "[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their arbitral, rather than a judicial, forum." Mitsubishi Motors, 473 U.S. at 628. While § 4302(b) might preclude an employer from requiring an employee to submit to arbitration, mediation, or any grievance procedure as a "prerequisite" to filing suit in federal court, the plain language does not preclude arbitration as a substitute for a judicial forum.

---

[2] The only cases which held that USERRA claims were not subject to a valid arbitration agreement pre-date Garrett. After the Fifth Circuit decided Garrett, all courts that have reached this issue have held that USERRA claims can be subject to mandatory arbitration.

See Landis, 537 F.3d at 564 (Cole, J., concurring).

In Breletic, the district court relied on language in the House Committee Report that states "[a]n express waiver of future statutory rights, such as one that an employer might wish to require as a condition of employment, would be contrary to the public policy embodied in the Committee bill and would be void" in order to conclude that Congress intended that a waiver of a judicial forum would not be enforceable. Breletic, 413 F.Supp.2d at 1337 (quoting H.R.Rep. No. 103-65, 1994, *as reprinted in* 1994 U.S.C.C.A.N. at 2453). It is ambiguous, however, whether the Report's reference to "future statutory rights" includes only substantive rights under USERRA or also includes the procedural right to a judicial forum. And, nothing in the Report shows an intent to repeal the FAA for USERRA claims. Given this ambiguity, to interpret the Report's reference to "future statutory rights" as relating to a right to a judicial forum, as the Breletic court did, "would run afoul of the presumption that arbitration provides a fair and adequate mechanism for enforcing statutory rights." Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, 170 F.3d 1, 13 (1st Cir. 1999) (Old Workers' Benefit Protection Act amendment to the ADEA forbidding wavier of "any right or claim" applied to substantive rights, but "not to the right to proceed in court rather than in arbitration."). The legislative history does not establish Congress's intention to prohibit arbitration agreements agreed to by an employer and an individual employee.[3]

---

[3] Because the issue is not before us, we do not address whether that
(continued...)

Finally, Will attempts to undermine the persuasiveness of Garrett by arguing that Garrett did not consider the Department of Labor ("DOL") regulations. The preamble to the DOL regulations discuss that § 4302(b) "includes a prohibition against the waiver in an arbitration agreement of an employee's right to bring a USERRA suit in federal court." 70 Fed. Reg. 75,246, 72,257 (Dec. 19, 2005). This reference to non-enforcement of a waiver of judicial forum for USERRA claims occurs in the DOL's response to comments regarding a proposed regulation regarding waiver of a substantive right under USERAA; the DOL regulations itself, as Garrett, 449 F.3d at 677 n.8, appropriately noted, do not address the arbitrability of USERRA claims. It is unclear what interpretive weight a preamble to the DOL's regulations should be accorded in interpreting Congress's intent to preclude enforcement of a pre-dispute arbitration agreement regarding USERRA claims. Even if this could be some indication of Congress's intent, it is at best very minimal indication of that intent, and insufficient to overcome the strong federal policy favoring arbitration.

Ultimately, I find Garrett persuasive and conclude that Will has failed to meet his burden of proving Congress's intent to preclude waiver of a jurisdictional forum for USERRA claims. See Gilmer, 500 U.S. at 26 (the inquiry into Congress's intent "must be addressed with a healthy regard for the federal policy favoring arbitration"). Furthermore, the "enforcement of employment

---

³(...continued)
legislative history suggests that the House, at least, intended to restrict an arbitration clause found in a collective bargaining agreement as applied to an USERRA claim.

-11-

arbitration agreements does not disserve or impair the protections guaranteed by USERRA." Garrett, 449 F.3d at 681. The public policy interests USERRA protects are important, but it is wrong to infer that USERRA's purposes can not be fully realized through arbitration. See Mitsubishi Motors, 473 U.S. at 637 ("[S]o long as the prospective litigant can effectively vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function.")

Therefore, because Will does not otherwise challenge the enforceability of the agreement to arbitrate, the court concludes that this matter is stayed pending arbitration under 9 U.S.C. § 3.

### III. Conclusion

For the forgoing reasons, it is ORDERED that Parsons's motion is GRANTED in part and DENIED in part. The motion is denied to the extent it requests dismissal of this action. The motion is granted to the extent it requests that this matter be stayed pending litigation.

It is FURTHER ORDERED that because the length of the arbitration process is uncertain, this case should be administratively closed pursuant to D.C.COLO.LCivR 41.2 with leave to be reopened for good cause shown. If no action is taken to reopen this case before January 1, 2010, the case will be dismissed without prejudice without any further notice to either party.

DATED: December 19, 2008

BY THE COURT:

*s/ David M. Ebel*
_____
David M. Ebel
United States Circuit Judge